UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THOMAS SIMCOE,

Petitioner,

Case No. 21-CV-06365-FPG

v.

CHRISTOPHER MILLER,                                         DECISION AND ORDER

Respondent.

## INTRODUCTION

Under 28 U.S.C. § 2254, *pro se* Petitioner Thomas Simcoe brings this habeas petition to challenge his state-court conviction for attempted first-degree murder of a police officer; attempted second-degree murder; three counts of attempted first-degree assault; two counts of second-degree assault; two fourth-degree weapon possessions; third-degree assault; and endangering the welfare of a child. ECF No. 1. Respondent Christopher Miller opposed the petition, ECF No. 15, and Petitioner replied. ECF No. 21. For the reasons set forth below, Petitioner's request for habeas relief is DENIED, and the petition is DISMISSED.

## BACKGROUND

In October 2008, Petitioner was convicted of the above charges after a bench trial before the Honorable Sara S. Sperrazza in Niagara County Court. ECF No. 1 at 1. The charges stemmed from a domestic dispute in which Petitioner beat and strangled his wife and attempted to stab a police officer who intervened in the dispute after Petitioner's thirteen-year-old son and a next-door neighbor called 911. ECF No. 15 at 3.

The People's case suggested the dispute was the result of a long, tumultuous relationship replete with violence, substance abuse, and mutual infidelity. ECF No. 15. Petitioner and Stacey

Simcoe were married for 14 years and living in an apartment in North Tonawanda, New York with their four children before the events that gave rise to the present petition. ECF No. 15 at 7. The two had discussed divorce and argued one evening because Petitioner had suspected she was having an affair with another man, whom Petitioner believed to be a crack user. *Id*. at 10-11. After the argument, an intoxicated Petitioner approached his wife late that night with a knife in his hand and pressed it against her face as she lay sleeping on the living room sofa. *Id*. at 12. After a brief struggle, Petitioner threw his wife to the ground where the knife had fallen and straddled her as she lay face down. *Id*. Stacey reached for the knife and grasped it while Petitioner pulled a rope from his pocket and wrapped it around her neck, choking her. *Id*. She swung the knife behind her while Petitioner pinned her to the ground. *Id*.

Petitioner's son was in his upstairs bedroom with his younger brother. *Id*. He testified that he heard his mother scream for help then called the police. *Id* at 13. Petitioner called for him to "come downstairs and see what I did to your mother." *Id*. He did, and witnessed Petitioner smash his mother's face against the floor. *Id*.

Sometime during the dispute, North Tonawanda Police Lieutenant Timothy Gray, Officer Jeffrey Smith, and Officer Keith Glass arrived at the residence in response to the 911 call placed by Petitioner's son, as well as one placed by a neighbor who had heard screaming. *Id* at 14. The officers knocked on the back door, announced their presence, but received no response. *Id*. Petitioner's son attempted to signal to the officers from an upstairs window what had transpired in the house and communicated to the officers that Petitioner may prevent him from opening the front door, causing Officers Smith and Glass to kick down the door and enter. *Id*. The officers saw Stacey lying on the floor in a pool of blood, called an ambulance, and located Petitioner in the residence after a brief search. *Id*. A struggle ensued between Petitioner and Officer Smith in

which Petitioner struck Officer Smith with a knife several times in his chest which was protected by a bulletproof vest.  *Id*. at 15.  Lieutenant Gray, while outside the residence, heard Officer Smith direct Petitioner to drop the knife.  *Id*.  Lieutenant Gray then entered the home and observed the ongoing altercation between the two men, and tased Petitioner.  *Id*. at 16.  Eventually, Officers Smith and Glass managed to subdue and arrest Petitioner.  *Id*.  Petitioner and Stacey were then both brought by ambulance to Degraff Hospital where each received treatment for the wounds they sustained in the encounter.  *Id*. at 17.

After receiving treatment, Petitioner was interviewed at the hospital by North Tonawanda Police Detective Robert Kalota.  *Id*. at 6.  Detective Kalota testified that Petitioner stated that "my wife and I are not getting along, she came after me with a knife, she has a boyfriend that does crack and I'm paying for it."  *Id*.  Petitioner also reportedly claimed that before his altercation with Officer Smith, Petitioner was "standing there with a knife" and told Officer Smith "to shoot him," before Officer Smith allegedly attacked him.  *Id*.

Before trial, Petitioner moved to suppress his statements to Detective Kalota as involuntary and Judge Sperrazza accordingly held a hearing pursuant to *People v. Huntley*, 15 N.Y.2d 72 (1965), after which she denied Petitioner's motion.  *Id*.  As discussed, Petitioner then proceeded to a non-jury trial.  *Id*. at 7.  Early in the trial, Judge Sperrazza ordered that Petitioner be restrained or "shackled" for the proceedings because Petitioner's in-court demeanor was "volatile."  *Id*. at 7.  During the re-direct examination of Petitioner, defense counsel asked Petitioner to relay what he had told Detective Kalota at the hospital.  *Id*. at 6.  After the People objected, Judge Sperrazza precluded the statements on the basis that such testimony was outside the scope of cross-examination.  *Id*.  Petitioner did not object to the ruling.  *Id*.

3

At trial, Petitioner did not contest attacking his wife or Officer Smith.  Petitioner's primary defenses were (i) justification with respect to his wife's injuries because she attacked him first and he had acted in self-defense; and (ii) that he committed the attack on his wife and Officer Smith under an extreme emotional disturbance ("EED") which he attempted to establish with expert testimony.  *Id*. at 20.  Petitioner testified that because Stacey attacked him first, he reasonably believed he had to use force to defend himself against an imminent threat of force.  *Id*.  Petitioner further testified that he "lost control" when he attacked Stacey and the officers.  *Id*. at 21.  Petitioner testified that Stacey was the initial aggressor and Dr. Charles Ewing, a forensic psychologist, testified that Petitioner was under EED during the attacks.  *Id* at 21, 29.  The People offered the testimony of Dr. Gary Horwitz, psychiatrist, to rebut the testimony of Dr. Ewing.  *Id*. at 32.  Dr. Horwitz testified that Petitioner was not under EED, but rather may suffer from personality disorders.  *Id*.

On October 16, 2008, Judge Sperrazza found Petitioner guilty of the charges above and sentenced him to a prison term which included 25 years, plus 5 years of supervised release, on the attempted murder count relating to his wife, to run consecutively with an indeterminate 30-year-to-life term on the attempted first-degree murder charge relating to Officer Smith.  *Id*. at 35.  Petitioner filed several challenges relating to his conviction thereafter, many, but not all, of which are renewed in his present petition.  The Court recounts the procedural history of such challenges chronologically.

On February 23, 2010, Petitioner challenged his conviction via direct appeal to the Appellate Division, Fourth Department (the "Appellate Division"), arguing that (1) the verdict was against the weight of the evidence; (2) trial counsel was ineffective because he did not make certain objections to the People's rebuttal expert, for using the word "gun," not "knife," on summation,

and for filing a "barebones" motion to set aside the verdict; and (3) his sentence was excessive and harsh.  ECF No. 14-1 at 1-11.  In addition, in a supplemental *pro se* brief, Petitioner argued that (1) restrictions on his testimony prevented development of his justification defense; (2) the People's expert testimony constituted an opinion of petitioner's guilt which invaded the province of the factfinder; and (3) the People violated *Brady* by knowingly presenting Gray's testimony without producing police disciplinary files that supposedly showed Gray's history of misconduct. *Id*.  On July 2, 2010, the Appellate Division affirmed Petitioner's conviction and denied his motion for reargument, and the New York Court of Appeals denied leave to appeal.  *People v. Simcoe*, 75 A.D.3d 1107 (4th Dep't 2010), *lv. denied*, 5 N.Y.3d 924 (2010).

On June 8, 2011, Petitioner moved to vacate his judgment of conviction pursuant to CPL § 440.10 due to ineffective assistance of counsel for alleged incorrect advice about Petitioner's maximum sentencing exposure and for underestimating the strength of the People's proof of attempted murder.  ECF No. 14-4 at 97.  Petitioner argued that if he had been correctly advised, he would have accepted a 15-year plea offer.  *Id*.  The People opposed the motion, and Petitioner replied, adding a claim that the trial court improperly restrained him with shackles during the trial. *Id*. at 193.  On August 8, 2012, the court denied Petitioner's motion in its entirety, rejecting Petitioner's ineffective assistance of counsel claim and his claim that he was prejudiced by the court's order that he be restrained at trial.  ECF No. 14-5 at 293.  The Appellate Division then granted Petitioner leave to appeal the denial of the above claims.  On February 11, 2016, the Appellate Division affirmed the lower court's denial, and the New York Court of Appeals later denied leave to appeal.  *See People v. Simcoe*, 136 A.D.3d 1355 (4th Dep't 2016), *lv. denied*, 27 N.Y. 3d 969 (2016).

On April 10, 2016, Petitioner moved to set aside his sentence pursuant to CPL § 440.20, arguing that the consecutive sentences violated the Eighth Amendment's prohibition against cruel and unusual punishment because they were disproportionate to his crimes.  ECF No. 14-8 at 464. The People responded and, on July 25, 2016, the County Court denied Petitioner's motion, determining that the sentences were not harsh or severe and, regardless, that Petitioner's argument was procedurally barred under § 440.20(2) because it had been previously rejected on appeal by the Appellate Division in 2010.  *Id*. at 482-85.  On November 27, 2016, the Appellate Division denied Petitioner's application for leave to appeal the Court's order.  *Id*. at 486-510.

On August 21, 2017, Petitioner moved to vacate his conviction in County Court arguing, *inter alia*, (i) actual innocence, (ii) that the People offered perjured testimony, and (iii) ineffective assistance of counsel because his attorney allegedly failed to make use of an apology note from Petitioner's wife and failed to cross-examine police witnesses with certain inconsistencies.  ECF No. 14-8 at 584.  Ultimately, the Court denied the motion because Petitioner had the opportunity in previous motions to raise the above issues or had already raised them.  ECF No. 14-11 at 1435. The Appellate Division denied leave to appeal on November 5, 2020 and, on March 31, 2021, denied his motion for reargument.

On May 3, 2021, Petitioner filed his present petition.  ECF No. 1.  Petitioner claims (1) the trial court's decision to preclude the statements he made to Kalota on the night of the attacks deprived him of his right to present his defenses of justification and EED; (2) the sentences he received for each attempted murder conviction violated his Eighth Amendment rights; (3) counsel was ineffective for incorrect advice regarding Petitioner's maximum sentencing exposure and for underestimating the strength of the People's case for attempted first-degree murder; (4) the trial court prejudiced Petitioner and exhibited bias and predisposition to convict by ordering Petitioner

be restrained at trial; (5) Petitioner was (i) actually innocent; (ii) denied due process when the prosecutor allegedly did not correct perjured testimony; and (iii) denied effective assistance of counsel because his attorney failed to use an alleged apology note from Petitioner's wife and did not impeach police witnesses with inconsistencies in their testimony.  *See* ECF No. 1.

## LEGAL STANDARD

28 U.S.C. § 2254 allows a petitioner to challenge his imprisonment from a state criminal judgment on the ground that it is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Where the petitioner raises a claim that was adjudicated in state-court proceedings, he is only entitled to relief if that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* § 2254(d)(1), (2).

"A principle is 'clearly established Federal law' for § 2254(d)(1) purposes only when it is embodied in a Supreme Court holding, framed at the appropriate level of generality."  *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (internal quotation marks, brackets, and citations omitted).  "A state court decision is 'contrary to' such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court has on a set of materially indistinguishable facts."  *Id.* (internal quotation marks omitted).  "An unreasonable application occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case, so that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Id.* (internal quotation marks and ellipses omitted). In analyzing a habeas claim, "[f]ederal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with clear and convincing evidence." *Hughes v. Sheahan*, 312 F. Supp. 3d 306, 318 (N.D.N.Y. 2018) (internal quotation marks omitted). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Id.*

Where, as here, the petitioner is proceeding *pro se*, the district court must read the pleadings liberally and construe them "to raise the strongest arguments they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

## DISCUSSION

Petitioner contests his conviction on seven grounds. First, he contends that the trial court erred when it precluded defense counsel from eliciting from Petitioner, on re-direct examination, statements he made to Kalota on the night of the attacks. Second, Petitioner claims the consecutives sentences he received for each attempted murder conviction violate his Eighth Amendment right against cruel and unusual punishment. Third, Petitioner claims ineffective assistance of counsel for alleged incorrect advice with respect to Petitioner's maximum sentencing exposure and for underestimating the strength of the People's case. Fourth, Petitioner argues the trial court's decision to restrain and "shackle" Petitioner at trial prejudiced him. Fifth, Petitioner asserts he is actually innocent. Sixth, Petitioner asserts the People failed to correct false and perjured testimony in violation of Petitioner's due process rights. Seventh, Petitioner claims ineffective assistance of counsel because defense counsel did not use an alleged apology note from

Petitioner's wife at trial and failed to impeach police witnesses with alleged inconsistencies in their testimony.  The Court now addresses each claim in turn.

## I.      Trial Court's Decision to Preclude Statements

Petitioner claims the trial court erred because it precluded his attorney from asking Petitioner about his statements to Kalota on re-direct examination, thereby preventing him from properly establishing justification and EED defenses in violation of his right to present a complete defense.  ECF No. 1 at 8.  Petitioner raised this claim, in part, on direct appeal, where the Appellate Division found it unpreserved and, accordingly, rejected it.  *Simcoe*, 75 A.D.3d at 1109, *lv. denied* 15 N.Y.3d 924, 913.  For the reasons below, the Court concludes Petitioner's claim is barred from federal habeas review.

As a general matter, federal courts "will not review questions of federal law presented in a habeas petition where the state court's decision on the claim" rests upon a "state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  Such a ruling must be supported by a "firmly established" and "regularly followed" state rule for review of a federal constitutional claim to be barred.  *Downs v. Lape*, 657 F.3d 97, 102 (2d Cir. 2011).  It is well settled that New York's contemporaneous objection rule is such a rule.  *Id.* at 104 (collecting cases).

Here, the Appellate Division found that Petitioner failed to properly preserve the above "complete defense" claim for appellate review, in accordance with New York's contemporaneous objection rule.  *Simcoe*, 75 A.D.3d at 1109.  The Court accordingly concludes that because the Appellate Division relied upon New York's contemporaneous objection rule, an independent and adequate state law ground for its decision to dispose of Petitioner's constitutional claim that he was deprived of his right to a complete defense, Petitioner's first claim is barred from federal

habeas review.  *Id.*; *see Garcia v. Lewis*, 188 F.3d 71, 82 (2d Cir. 1999).  This aspect of the petition is accordingly denied.

## II.       **Eighth Amendment Claim**

Petitioner next contends that his consecutives sentences violate the Eighth Amendment's prohibition against cruel and unusual punishment.  Petitioner exhausted his state law avenues to relief with respect to this claim because he raised it in his CPL § 440 application and the Appellate Division denied leave to appeal the CPL § 440 Court's denial.  For the reasons set forth below, the Court concludes that the CPL § 440 Court's rejection of Petitioner's argument was not contrary to, or based on an unreasonable application of, Supreme Court law.  ECF No. 14-7 at 482.

The Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime.'"  *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)).  "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [are] exceedingly rare."  *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).   *See United States v. Snype*, 441 F.3d 119, 152 (2d Cir. 2006).  "'[A] reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate' because 'the decision of a sentencing [court] is entitled to substantial deference.'"  *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (quoting *United States v. Persico*, 853 F.2d 134, 138 (2d Cir. 1988)).

In the present case, the CPL § 440 Court's determination that Petitioner's sentences were not "grossly disproportionate" was not contrary to, or based on an unreasonable application of, Supreme Court law.  ECF No. 14-7 at 482.  In light of Petitioner's "sadistic" crimes, the court concluded that his sentences could not be considered cruel and unusual under the above standard.

*Id*. at 484.  The court reasoned that because Petitioner "choked his wife with a rope until she was unconscious, fractured her skull by striking her head against the hardwood floor in their family home, and bit off a portion of her lower lip while his twelve-year-old son watched," Petitioner's consecutive sentences totaling fifty-five years to life was not "grossly disproportionate" to his crimes.  *Id*.  In addition, the court observed that Petitioner "continued to smash his wife's face into the floor […] [w]hen his son came downstairs[,]" and "stabbed one police officer three times, penetrating his bulletproof vest."  *Id*.  Accordingly, the CPL § 440 Court concluded that Petitioner's claim was without merit.  In light of the foregoing, this Court cannot say that the CPL § 440 Court's determination was contrary to, or based on an unreasonable application of, Supreme Court law.  This aspect of the petition is accordingly denied.

### III.   Ineffective Assistance of Counsel Claim for Maximum Sentencing Exposure Advice

Petitioner argues that his counsel misadvised him about his sentencing exposure and incorrectly opined that the attempted first-degree murder charge "would not hold up in court." ECF No. 1.  For the reasons set forth below, the Court concludes that the CPL § 440 Court and the Appellate Division's rejection of Petitioner's argument was not contrary to, or based on an unreasonable application of, Supreme Court precedent.  ECF No. 14-7 at 482.  This aspect of the petition is accordingly denied.

The state courts properly rejected Petitioner's claim after applying the standard below.  As a general matter, it is well settled that "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."  *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citations omitted)."  To establish a violation, a petitioner must show that (1) counsel supplied deficient representation that "fell below an objective standard of reasonableness . . . under prevailing professional norms"; and (2) that petitioner suffered prejudice as a result.  *Strickland v.*

*Washington*, 466 U.S. at 687-88 (1984).  In the plea-bargaining context, courts must determine whether counsel acted incompetently in the duty to give "professional advice on the crucial decision of whether to accept a plea offer from the government."  *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).  To establish prejudice from a failure to carry out that duty, a petitioner must show that he would not have pled guilty absent counsel's errors.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."  *Harrington v. Richter*, 562 U.S. 86, 110 (2011).  The standard is deferential to the attorney, who observed the proceedings, knew of material outside the record, and interacted with the parties. When such deference is combined with the § 2254(d) deference accorded to state court findings, habeas review is "doubly" deferential.  *Richter*, 562 U.S. at 105.

Here, Petitioner cannot show that counsel's performance fell below an objective standard of reasonableness, nor did the state courts unreasonably apply Supreme Court law, or unreasonably interpret the record, in their rejection of Petitioner's claims.

Petitioner first claims he was incorrectly advised about his sentencing exposure.  Here, the Appellate Division correctly held that the CPL § 440 Court reasonably determined that counsel's performance did not fall below the first prong of the *Strickland* standard.  *People v. Simcoe*, 136 A.D.3d 1355, 1355 (4th Dep't 2016).  That is, Petitioner failed to show that his counsel's performance fell below an objective standard of reasonableness.  The CPL § 440 Court first addressed a series of letters from Petitioner's counsel evidencing extensive discussions between the two with respect to Petitioner's sentencing exposure for his crimes.  ECF No. 14-5 at 240.  In short, the letters amply show that defense counsel competently explained the People's offer to reduce the attempted murders to first-degree assaults in exchange for the People's recommendation of a 20-year prison sentence, and that counsel discussed the plea "exhaustively" with Petitioner,

12

explained Petitioner's options, and the ramifications of conviction if Petitioner proceeded to trial. ECF No. 14-4 at 112.  The Appellate Division, upon review, correctly observed Petitioner does not allege that any of his defense counsel's advice was "legally incorrect," but that, "in sum and substance," defense counsel, at worst, had an "overly optimistic outlook on the case[,]" which, standing alone, is insufficient to support a determination that counsel's performance fell below an objective standard of reasonableness.  *People v. Simcoe*, 136 A.D.3d 1355, 1356 (4th Dep't 2016). The state courts accordingly reasonably concluded that because the correspondence between Petitioner and defense counsel made clear that the "plea information was relayed to [Petitioner]", that Petitioner "did not want the plea", and defense counsel was "honoring [Petitioner's] decision" by proceeding to trial, Petitioner was provided with meaningful representation at the plea-bargaining stage.  ECF No. 14-5 at 241; *see also Simcoe*, 136 A.D.3d at 1356; *see generally People v. Baldi*, 54 N.Y.2d 137, 147 (1981).

Petitioner next claims he was incorrectly advised about the strength of the People's case against him with respect to the charge of attempted murder of a police officer.  The state courts reasonably and correctly applied *Strickland* in rejecting this claim, as well.  The state courts correctly observed that Petitioner proffered no evidence to support a claim that defense counsel stated that he would "never" be convicted of attempting to murder Officer Smith.  *Simcoe*, 136 A.D.3d at 1356.  In addition, though not explicitly stated, the Appellate Division may have concluded that because defense counsel's advice with respect to the People's plea offer, which included a first-degree assault charge instead of attempted murder, would have required Petitioner to admit to the same mental state required for a murder charge, it was unlikely that Petitioner was incorrectly advised about the strength of the People's case.  *See* N.Y. Penal Law §§ 125.27(1)(a)(i), 120.10(1).

13

For these reasons, the Court holds that the Appellate Division and the CPL § 440 Court reasonably applied *Strickland* in concluding that Petitioner's counsel's performance did not fall below an objective standard of reasonableness and concluding that counsel, at worst, may have had an "overly optimistic" view of the case.  *Simcoe*, 136 A.D.3d at 1355.  This aspect of the petition is accordingly denied.

### IV.   Trial Court's Decision to Restrain or "Shackle" Petitioner at Trial

Petitioner next claims that Judge Sperrazza prejudiced petitioner by ordering that he be restrained or "shackled" at his non-jury trial.  This claim is similarly without merit and the state courts reasonably concluded so.

As a general matter, constitutional protections against bias or prejudice arising from the use of physical restraints or "shackles" at trial are implicated only in the context of a jury trial. "[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints *visible to the jury* absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest […]"  *Deck v. Missouri*, 544 U.S. 622, 629 (2005) (emphasis added); *see e.g. Jones v. Artus*, 16-cv-6149, 2018 U.S. Dist. LEXIS 81183 at *28 (W.D.N.Y. May 14, 2018) ("Whether Jones was shackled at the sentencing hearing is no basis for habeas corpus relief. This is not a case where a defendant was restrained or shackled in front of a jury.); *see also Andrade v. Martuscello*, 12 CV. 6399, 2013 U.S. Dist. LEXIS 77670, *69 (S.D.N.Y. June 3, 2013) (collecting cases holding that prejudice can arise from the use of restraints only if a jury is aware of the restraints).

Before the Appellate Division, the CPL § 440 Court and in the present petition, Petitioner cited no case law to challenge the trial court's determination that Petitioner's due process rights were not implicated by the application of physical restraints to Petitioner during the non-jury trial. The state courts reasonably rejected Petitioner's claim because "[t]he paramount concern" in

"shackling" or restraint cases is the potential for "jury bias."  ECF No. 14-2 at 249.  In short, because Petitioner was restrained during a non-jury trial and offers no legal support for his claim, this aspect of his petition is denied.

### V.   Petitioner's Remaining Claims

#### A.  Actual Innocence

Petitioner claims "actual innocence" as a basis for federal habeas relief.  It is well settled that, at this stage, a claim of "actual innocence" may be proffered only to excuse a petitioner's failure to (i) meet a procedural requirement, such as the command to exhaust state claims in state court before reaching federal court, *Schlup v. Delo*, 513 U.S. 298, 315-16 (1995), or (ii) file a habeas petition within the one-year statute of limitations after a challenged judgment becomes final.  *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).  Therefore, Petitioner's claim of actual innocence, standing alone, cannot serve as a basis for federal habeas relief.  To the extent Petitioner claims "actual innocence" as an excuse for his failure to bring claims that would otherwise be procedurally barred, Petitioner fails to proffer the requisite evidence of such innocence.

To do so, Petitioner must present "credible and compelling evidence" of actual innocence. *Rivas v. Fischer*, 637 F.3d 514, 540-41 (2d Cir. 2012).  Because Petitioner presents no evidence, let alone "credible and compelling evidence," at this stage, Petitioner's claim of "actual innocence" must be denied and cannot excuse otherwise procedurally barred claims.

#### B.  Due Process Denial Due to Prosecutorial Misconduct and Ineffective Assistance of Counsel

Petitioner claims a violation of his Due Process rights due to the People's alleged failure to correct perjured testimony.  In addition, Petitioner claims ineffective assistance of counsel because defense counsel failed to use an alleged apology note from Petitioner's wife and did not

impeach police witnesses with inconsistencies in their accounts.  For the reasons set forth below, such claims are barred from federal habeas review.  Petitioner's claims are accordingly denied.

It is well settled that a federal habeas court may not review a constitutional claim when the latest state court ruling on the claim rested upon "a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman*, 501 U.S. at 729.  Such grounds must be "firmly established and regularly followed."  *Id.*

Here, the CPL § 440 Court held, *inter alia*, that Petitioner's claims must be denied because, pursuant to CPL § 440.10(3), a court may deny a motion where "[u]pon a previous motion made pursuant to CPL § 440.10, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so."  ECF No. 14-11 at 1436-37.  Because Petitioner had the opportunity in his previous motions to raise the issues he presented or had already raised the same issues, the CPL § 440 Court denied Petitioner's motion.

That is, the CPL § 440 Court's ruling rested on "firmly established and regularly followed" state law grounds that were "independent and adequate to support the judgment."  *Coleman*, 501 U.S. at 729.  New York courts regularly apply CPL § 440.10(3) in rejecting § 440.10 claims and the Second Circuit has long recognized that a state court's reliance on § 440.10(3)(c) bars federal habeas review.  *Murden v. Artuz*, 497 F.3d 178, 191-94 (2d Cir. 2007).  In short, because the CPL § 440 Court correctly determined that Petitioner could have brought the prosecutorial misconduct and ineffective assistance of counsel claims described above in his previous CPL § 440 motion, in which he argued that the People violated *Brady* and that his defense counsel incorrectly advised him with respect to his sentencing exposure, Petitioner's final claims are barred from federal habeas review.  This aspect of the present petition is accordingly denied.

**CONCLUSION**

Petitioner's request for habeas relief is DENIED and his petition, ECF No. 1, is DISMISSED.   Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.   The Clerk of Court shall enter judgment and close the case.

IT IS SO ORDERED.

Dated: November 1, 2022
        Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Court Judge
Western District of New York